

**ORDERED in the Southern District of Florida on July 3, 2012.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 09-36379-BKC-PGH |
| **Palm Beach Finance Partners, L.P.** | CHAPTER 11 |
| **and Palm Beach Finance II, L.P.,** | |
| _____Debtors._____/ | |
| **Barry Mukamal,** | ADV. NO.: 11-03015-BKC-PGH-A |
| _____Plaintiff,_ | |
| v. | |
| **BMO Harris Bank N.A. as Successor** | |
| **by Merger to M&I Marshall & Ilsley** | |
| **Bank and Christopher Flynn,** | |
| _____Defendants._____/ | |

### ORDER GRANTING MOTION TO DISMISS

THIS MATTER came before the Court upon the _Motion to Dismiss_ (the

"Motion to Dismiss") (ECF No. 11) filed by BMO Harris Bank N.A. as Successor by

Merger to M&I Marshall & Ilsley Bank and Christopher Flynn (the "Defendants").

1

The Motion to Dismiss seeks dismissal of the *Complaint* (ECF No. 1) filed by Barry Mukamal (the "Plaintiff") in his capacity as Liquidating Trustee for the Palm Beach Finance Liquidating Trust and the Palm Beach Finance II Liquidating Trust. For the reasons discussed below, the Court grants the Defendants' Motion to Dismiss and dismisses, without prejudice, the Plaintiff's Complaint.

## COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

According to the allegations of the Complaint, Palm Beach Finance Partners, L.P. ("PBF I") and Palm Beach Finance II, L.P. ("PBF II" and together with PBF I, the "Palm Beach Funds") were investors in the purchase financing operation run by Thomas Petters ("Petters") and Petters Company, Inc. ("PCI"). To facilitate these investing activities, the Palm Beach Funds created an affiliated entity, PBFP Holdings, LLC ("PBFP Holdings"). In soliciting investments, Petters represented to investors that investment funds would be used to finance consumer electronic merchandise transactions. Petters claimed he would arrange for the sale and delivery of consumer electronic merchandise from suppliers to "big box" retailers, such as Costco and Sam's Club. Based upon these representations, the Palm Beach Funds and other investors wired funds directly to the bank accounts of two purported suppliers. After receiving these wire transfers, the suppliers were expected to ship the consumer electronic merchandise to retailers. The retailers were then to send payment for the merchandise to a PCI depository account (the "PCI Account"), which was maintained at M&I Marshall & Ilsley Bank ("M&I"). In

2

theory, those retailer funds were to be used first, to re-pay investors and second, to pay a commission to PCI or another Petters-affiliated entity.

Petters, however, was not operating a legitimate purchase financing operation. Petters was running a Ponzi scheme[1] – there were no purchase orders, no merchandise, no retailers, no sales to any retailers, and no payments from any retailers. Instead, according to the allegations, after receiving wire transfer funds from investors, the suppliers[2] would deduct a commission and then remit the remaining funds to the PCI Account. Thereafter, the funds were allegedly used to repay earlier investors and to fund Petters' lavish lifestyle.

The Plaintiff alleges that M&I, Petters' primary depository bank, received fraudulent transfers, knew of Petters' fraud, and engaged in wrongdoing which allowed Petters' fraud to continue undetected. Central to the Plaintiff's allegations of wrongdoing is the Deposit Account Management Agreement ("DAMA"), attached to the Complaint as Exhibit 1, executed by PCI and M&I for the alleged purpose of inducing the Palm Beach Funds into entering into more purchase financing transactions. Furthermore, the Plaintiff alleges that Christopher Flynn ("Flynn"), an employee of M&I who was primarily responsible for the Petters relationship and who executed the DAMA on behalf of M&I, also knew of Petters' fraud and engaged

[1] In September 2008, Petters' purchase financing operation was exposed as a Ponzi scheme. In October 2008, Petters was arrested and charged with mail and wire fraud, conspiracy to commit mail and wire fraud, money laundering, and conspiracy to commit money laundering. By April 2010, Petters had been found guilty on all counts and sentenced to 50 years in prison. As a result of this collapse, PCI and other related entities filed voluntary bankruptcy petitions in the United States Bankruptcy Court for the District of Minnesota.

[2] The principals of the two primary suppliers each pled guilty to conspiracy to commit money laundering. Compl. Ex. 4.

in wrongdoing which allowed Petters' fraud to continue undetected. Finally, the Plaintiff alleges that as a result of the Defendants' wrongdoing, the Palm Beach Funds entered into hundreds of millions of dollars in new transactions and thus lost more money than they otherwise would have lost.

## CONCLUSIONS OF LAW

### I.    Motion to dismiss standard

In order to state a claim for relief under Federal Rule of Civil Procedure 8(a)[3] and thus survive a Rule 12(b)(6) motion to dismiss, the factual allegations of the Plaintiff's Complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009). In determining facial plausibility, a court should not assume the veracity of mere legal conclusions or threadbare recitals of the elements of a cause of action. *Id.* at 679. However, when "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. If a plaintiff's allegations do "not nudge[]

---

[3] Rule 8(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, requires that a pleading "contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1288, 1290 (11th Cir. 2010) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When a plaintiff asserts claims based upon fraud or mistake, meeting the pleading requirements of Rule 8(a) is insufficient to survive a Rule 12(b)(6) motion to dismiss. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)). The Eleventh Circuit Court of Appeals has held that:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)). "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind."

*Id.* "[M]alice, intent, knowledge, and other conditions of a person's mind" may be pled generally.[4] FED. R. CIV. P. 9(b).

In bankruptcy proceedings, the particularity requirement of Rule 9(b) is relaxed in the context of fraud claims brought by a trustee. *Kapila v. Arnel (In re Arizen Homes, Inc.)*, 2009 WL 393863, *2 (Bankr. S.D. Fla. Jan. 22, 2009) (quoting *Profilet v. Cambridge Fin. Corp.*, 231 B.R. 373, 379 (S.D. Fla. 1999)); *see also, Tolz v. U.S. (In re Brandon Overseas, Inc.)*, 2010 WL 2812944, *5 (Bankr. S.D. Fla. July 16, 2010); *Wiand v. EFG Bank*, 2012 WL 750447, *6 (M.D. Fla. Feb. 8, 2012). "Such flexibility afforded to trustees in bankruptcy with respect to the pleading requirements is appropriate '[g]iven the inevitable lack of knowledge concerning the acts of fraud previously committed against the debtor, a third party.'" *In re Arizen Homes,* 2009 WL 393863, at *2. Thus, when a trustee brings a claim for fraud, Rule 9(b)'s particularity requirement is met "'if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate information to frame a response . . . or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *In re Brandon Overseas*, 2010 WL 2812944, at *5 (quoting *In re Arizen Homes*, 2009 WL 393863, at *2).

Here, the following claims asserted by the Plaintiff are subject to the pleading requirements of Rule 9(b) as applicable to trustees in bankruptcy: (1)

---

[4] "'[G]enerally' is a relative term." *Iqbal*, 556 U.S. at 686. "Rule 9 merely excuses a party from pleading . . . intent under an elevated pleading standard. It does not give him license to evade the less rigid – though still operative – strictures of Rule 8." *Id.* at 686-87. Under Rule 8, as discussed above, a plaintiff is not entitled "to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

Count I, avoidance and recovery of actually fraudulent transfer;[5] (2) Count V, aiding

and abetting fraud; (3) Count VI, fraudulent inducement; (4) Count VII, fraudulent

misrepresentation; (5) Count VIII, conspiracy to commit fraud; (6) Count XI,

negligent misrepresentation;[6] and (7) Count XII, unjust enrichment.[7] The Plaintiff's

remaining counts – Counts II, III, and IV, avoidance and recovery of constructive

fraudulent transfers;[8] Count X, gross negligence; and Count XI, breach of fiduciary

duty – need only meet the pleading requirements of Rule 8(a).

---

[5] Rule 9(b) applies to fraudulent transfer claims based upon allegations of actual fraud. *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*, 2007 WL 2826603, *5 (S.D. Fla. Sept. 25, 2007); *Roberts v. Balasco (In re Ernie Haire Ford, Inc.)*, 459 B.R. 824, 840 (Bankr. M.D. Fla. 2011).

[6] "Courts . . . have reached varying conclusions regarding whether Rule 9(b) applies to negligent misrepresentation claims." *Pruco Life Ins. Co. v. Brasner*, 2011 WL 2669651, *4 (S.D. Fla. July 7, 2011) (citing *Atwater v. Nat'l Football League Players Ass'n*, 2007 WL 1020848, *13 (N.D. Ga. Mar. 29, 2007)). However, in Florida, courts have often applied Rule 9(b) to claims of negligent misrepresentation because historically, "negligent misrepresentation sounds in fraud rather than negligence." *Id.* (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1487, 1511 (11th Cir. 1993) (collecting opinions which have applied Rule 9(b) to negligent misrepresentation)).

[7] A claim for unjust enrichment must meet the pleading requirements of Rule 9(b) if it "premised on fraud." *U.S. v. Gericare Med. Supply Inc.*, 2000 WL 33156443, *10 (S.D. Ala. Dec. 11, 2000) (quoting *Daly v. Castro Llanes*, 30 F.Supp.2d 407, 414 (S.D.N.Y. 1998)); *see also, U.S. ex rel. Citizens United to Reduce & Block Federal Fraud, Inc. v. Metro. Med. Ctr., Inc.*, 1990 WL 10519617, *3 (S.D. Fla. Jan. 11, 1990).

[8] The Court applies Rule 8(a), rather than Rule 9(b), as the appropriate pleading standard for the Plaintiff's constructive fraudulent transfer claims. There is a split of authority within the Eleventh Circuit as to whether Rule 9(b)'s heightened pleading standard applies to constructive fraudulent transfer claims. *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F.Supp.2d 1353, 1369 & n.15 (S.D. Fla. 2011). Rule 9(b)'s heightened pleading requirement addresses three primary concerns: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal citations omitted); *see also, Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1998). These concerns generally do not arise in the context of constructive fraudulent transfer claims. Thus, "numerous cases have held that when pleading a constructive fraudulent conveyance, the pleading standard falls under [Rule] 8(a) and not Rule 9." *Scarver v. Patel (In re Haven Trust Bancorp, Inc.)*, 461 B.R. 910, 913 (Bankr. N.D. Ga. 2011); *see also, Kapila v. Arnel (In re Arizen Homes, Inc.)*, 2009 WL 393863, *3 (Bankr. S.D. Fla. Jan. 22, 2009).

## II.    Failure to comply with Rule 8(a)'s notice pleading requirements

The purpose of the pleading requirements outlined in Rule 8(a) is to provide the defendants with "fair notice of what the claim is and the grounds upon which it rests." *Peavey v. Black*, 2012 WL 986801, *2 (11th Cir. Mar. 23, 2012) (quoting *Harrison v. Benchmark Elecs. Hunstville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010)). "Shotgun pleadings" do not comply with Rule 8(a)'s requirement for a "short and plain statement" and thus make "'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Peavey*, 2012 WL 986801, at *2 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996)). A shotgun pleading "invariably begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). The pleading then "'incorporate[s] every antecedent allegation by reference into each subsequent claim for relief.'" *Liebman v. Deutsche Bank Nat. Trust Co.*, 2012 WL 577342, *2 (11th Cir. Feb. 23, 2012) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Time and again, the Eleventh Circuit Court of Appeals has criticized this type of pleading:

> Shotgun pleadings impede the administration of the . . . courts' civil dockets in countless ways. The . . . court, faced with a crowded docket and whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials. It is therefore left to this court to sort out on appeal the meritorious issues from the unmeritorious ones, resulting in a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*Peavey*, 2012 WL 986801, at *2 (alteration, citation, and quotation marks omitted) (quoting *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010)); *see also*, *Serpentfoot v. Rome City Comm'n*, 426 Fed. Appx. 884, 885 n.1 (11th Cir. 2011) (calling shotgun pleadings a "ubiquitous problem"); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001) (stating that "shotgun pleadings wreak havoc on the judicial system"). Citing the negative impact that shotgun pleadings have on the administration of civil justice, the Eleventh Circuit has held that district courts, and therefore bankruptcy courts, may *sua sponte* dismiss a complaint which constitutes a shotgun pleading so that the plaintiff may replead the complaint to bring it into compliance with Rule 8(a)'s notice pleading requirements. *Magluta*, 256 F.3d at 1284 n.3 (noting that the Eleventh Circuit "has held that district courts confronted by [shotgun pleadings] have the inherent authority to demand repleader *sua sponte*").

The Plaintiff's Complaint is a textbook example of a "shotgun pleading." The Complaint spans 68 pages, excluding 76 pages of exhibits, and contains 322 numbered paragraphs. Furthermore, each claim, of which there are twelve,

9

reasserts the allegations set forth in paragraphs 1 through 239. By reasserting the allegations in paragraphs 1 through 239 in each claim, the Plaintiff makes it difficult, if not impossible, for the Defendants and the Court to discern which allegations are meant to support which claims. Because the Plaintiff's Complaint does not comply with Rule 8(a)'s notice pleading requirements, the Court finds it appropriate to dismiss the entire Complaint without prejudice to the Plaintiff filing an amended complaint which complies with Rule 8(a).

## III.    Additional bases for dismissal

In addition to the Plaintiff's failure to comply with Rule 8(a)'s notice pleading requirements, the Court finds that there are additional bases for dismissing some of the Plaintiff's claims.

### A.    Counts X and XI, gross negligence and breach of fiduciary duty

Count X, which purports to state a claim for gross negligence,[9] and Count XI, which purports to state a claim for breach of fiduciary duty,[10] each require that the Plaintiff plead that M&I owed a duty to the Palm Beach Funds and then breached that duty. In its Motion to Dismiss, M&I argues that as a matter of law it owed no duty of any kind to the Palm Beach Funds. The Court agrees with M&I.

---

[9] The four elements that a plaintiff must prove in order to establish negligence are: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty by failing to exercise ordinary care; (3) the breach caused injury to the plaintiff; and (4) the plaintiff suffered damages as a result of that injury. *Kayfetz v. A.M. Best Roofing, Inc.*, 832 So.2d 784, 786 (Fla. 3d DCA 2002). Gross negligence is the failure to exercise slight care. *Cadore v. Karp*, 91 So.2d 806, 808 (Fla. 1957).

[10] "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002).

i.    *Count X, gross negligence*

A duty of care may arise from four sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003) (quoting *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 n.2 (Fla. 1992)). When a plaintiff alleges a contractual duty of care, "the contract itself is but one facet of the general facts of the case." *Id.* Here, the Plaintiff alleges in Count X that under the DAMA, M&I owed a duty of care to the Palm Beach Funds "to act as a custodian and escrow agent with respect to the movements of the Palm Beach Funds'[] monies in the [PCI] Account." However, a careful review of the plain language[11] of the DAMA, which is attached to the Complaint,[12] reveals that any duty of care owed by M&I to the Palm Beach Funds as a result of the DAMA only arose upon PCI's delivery of a "Transaction List" to M&I. Compl. Ex. 1, ¶ 2.

According to the terms of the DAMA, from time to time funds came into the PCI Account in connection with Petters' purchase financing operation. Some of these funds should have been paid to one of "several financial entities . . .

---

[11] "Under Florida law, the intention of the parties to a contract is to be deducted from language employed, and such intention, when expressed, is controlling." *Miami Battery Mfg. Co. v. Boston Old Colony Ins. Co.*, 2000 WL 35288123, *3 (S.D. Fla. July 27, 2000) (citing *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 468 (5th Cir. 1968)). "In construing . . . contractual language courts should attempt to give words and phrases the natural meaning or the meaning most commonly understood when considered in reference to the subject matter and the circumstances." *Int'l Erectors, Inc.*, 400 F.2d at 468.

[12] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). Thus, the Court properly considers the DAMA in evaluating the Defendants' Motion to Dismiss. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

designated as third party beneficiaries (the Protected Parties)." Compl. Ex. 1. PBFP

Holdings and PBF I were each named as Protected Parties. *Id*. at ¶ 1(b). The stated

purpose of the DAMA was to "provide legal assurance to the Protected Parties that

deposits into the [PCI Account] which should have been paid into a Protected

Part[y's] lock box or directly to a Protected Party [were] held for the benefit of the

Protected Party and [would] be immediately transferred to the Protected Party[]."

*Id*. at ¶ 1(a).

M&I had the express duty to "manage and control [the PCI] Account in

accordance with the guidelines and procedures established by [the DAMA.]" *Id*. at ¶

1(d). According to the guidelines and procedures established by the DAMA, PCI was

required to:

> provide to each Protected Party and M&I at least once each week (or
> more often if necessary to enable M&I to discharge is obligations
> hereunder), a list of all Transactions funded by a Protected Party with
> respect to which payment may be received by M&I for deposit in the
> Deposit Account (Transaction List). This Transaction List shall include
> the name of the purchaser or obligor, the purchaser's payor bank and
> the banking coordinates, the purchase order date and number, the
> invoice date and number, the payment due date, and the Protected
> Party which has financed the Transaction and the amount financed by
> the Protected Party.

*Id*. at ¶ 2(b). Upon receiving a Transaction List, M&I was required to:

> compare each payment received by wire transfer or otherwise to the
> most recently received Transaction List provided to it by [PCI] and . . .
> automatically transfer each payment on a Transaction funded by a
> Protected Party to an M&I account established by and for the benefit
> of each Protected Party as required herein.

*Id*. at ¶ 2(c). In performing these limited duties under the DAMA, M&I was

"entitled to rely . . . upon any [writing or other message] received by M&I from [PCI]

and reasonably believed by M&I to be genuine and correct and to have been signed, sent or made by an authorized person." *Id.* at ¶ 6(a)(ii).

This contractual language of the DAMA is clear: M&I merely undertook an obligation to provide the limited service described above, which was conditioned upon the receipt of Transaction Lists. M&I did not undertake a general obligation to monitor the PCI Account or PCI's business practices as the Complaint alleges.[13] Furthermore, not only does the language of the DAMA indicate that M&I's duties arose only upon receipt of a Transaction List, but it also indicates that it would have been impossible for M&I to perform its duties without having received any Transaction Lists. The DAMA expressly permitted M&I to rely on, and to be fully protected in relying on, the information it received from PCI. Compl. Ex. 1, ¶ 6(a)(ii). M&I was only required to hold "Protected Party Funds . . . in trust for the Protected Party to whom the funds [were] required to be paid." *Id.* at ¶ 1(a). The DAMA expressly contemplated that other deposits into the PCI Account would be made by and for the benefit of PCI and that "[s]uch deposits [were not [to be] held in trust for the Protected Parties." *Id.* at ¶ 1(c). The terms of the DAMA permitted PCI to "withdraw or direct the transfer of moneys which [did] not comprise Protected Party Funds from the [PCI] Account at any time." *Id.* at ¶ 1(e). The Court therefore finds that according to the plain language of the DAMA, M&I's limited

---

[13] The Court's "duty to accept the facts in the complaint as true does not require [the Court] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc.*, 496 F.3d at 1205-06 (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

duty to act was conditioned upon, and thus did not arise until, the receipt of a Transaction List provided by PCI.

Here, the Plaintiff did not allege in the Complaint that M&I received a Transaction List. In fact, the Plaintiff alleges that one of the ways in which M&I breached its duty of care was by failing to obtain Transaction Lists. Because it is clear from the Plaintiff's allegations that M&I never received a Transaction List, M&I's duty to act pursuant to the terms of the DAMA never arose as a matter of law. Because M&I's duty to perform never arose, M&I's duty of care never arose.[14] Because the existence of a duty of care is essential to a claim for gross negligence, Count X fails to state a claim upon which relief can be granted.

ii.    *Count XI, breach of fiduciary duty*

In order to state a claim for breach of fiduciary duty, the Plaintiff must allege the existence of a fiduciary duty owed by M&I to the Palm Beach Funds.  Here, the Plaintiff alleges that pursuant to the DAMA, "M&I owed a fiduciary duty to the Palm Beach Funds by virtue of its commitment to act as custodian and escrow agent with respect to the movements of the Palm Beach Funds' monies in the [PCI] Account." The Plaintiff also alleges that "[t]he Palm Beach Funds placed a high level of trust and confidence in M&I and relied upon it to perform its obligations under the [DAMA]." These allegations, considered in the context of the plain language of the DAMA, are insufficient to allege the existence of a fiduciary duty.

---

[14] It is true that "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service . . . thereby assumes a duty to act carefully." *Clay Elec. Co-op., Inc.*, 873 So.2d at 1186. However, it is axiomatic that a plaintiff has no duty to act carefully if he had no duty to act at all.

"A fiduciary relationship may be either express or implied." *Hogan v. Provident Life and Accident Ins. Co.*, 665 F.Supp.2d 1273, 1287 (M.D. Fla. 2009) (citing *Maxwell v. First United Bank*, 782 So.2d 931, 933 (Fla. 4th DCA 2001)).

> Express fiduciary relationships are created by contract or legal proceedings. Implied fiduciary relationships "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties" and exist where "confidence is reposed by one party and a trust accepted by the other." Thus, the plaintiff must allege both that the plaintiff placed trust in the defendant and the defendant accepted that trust.

*Id.* (internal citations omitted); *see also, Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F.Supp.2d 1064, 1071 (S.D. Fla. 2003). Stated differently, "[i]n order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Lanz v. Resolution Trust Corp.*, 764 F.Supp. 176, 179 (S.D. Fla. 1991) (citing *Cripe v. Atlantic First Nat. Bank*, 422 So.2d 820 (Fla. 1982)). The mere fact that "one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.* (citing *Harris v. Zeuch*, 137 So. 135 (Fla. 1931)).

Per the terms of the DAMA, M&I never expressly undertook a duty to act as a fiduciary to the Palm Beach Funds. M&I undertook an obligation to provide a limited service to PCI and the Palm Beach Funds – transferring money from the PCI Account to the appropriate Protected Party whenever a Transaction List provided by PCI indicated that money belonging to a Protected Party had been

15

erroneously deposited into the PCI Account. M&I had no discretion over which funds were transferred, and in transferring funds, M&I was entitled to rely entirely on the information provided to it by PCI. M&I's role was essentially ministerial. Furthermore, to the extent that M&I undertook a duty to act as "custodian" of the PCI Account for the benefit of PCI and the Protected Parties, this duty would have related only to funds belonging to a Protected Party which, as indicated on a Transaction List, were erroneously deposited into PCI's Account. For the reasons discussed above, any duty M&I had to act as "custodian" of erroneously deposited funds never arose because the Complaint does not allege that PCI provided M&I with a Transaction List. Thus, no express fiduciary duty owed by M&I to the Palm Beach Funds ever arose.

In order for the Plaintiff to adequately allege a fiduciary duty implied from the "specific factual situation surrounding the transaction and the relationship of the parties," the Plaintiff must allege both that Palm Beach Funds placed trust in M&I and that M&I accepted that trust. While the Plaintiff does allege that the Palm Beach Funds "placed a high level of trust" in M&I, the Plaintiff does not allege that M&I accepted this trust or that M&I in any way undertook to advise, counsel, and protect the Palm Beach Funds. The only allegation related to M&I's acceptance of the Palm Beach Funds' trust is the conclusory statement that "M&I owed a fiduciary duty to the Palm Beach Funds by virtue of its commitment to act as a custodian and escrow agent." These allegations are insufficient to establish that

M&I owed an implied fiduciary duty to the Palm Beach Funds. The Court therefore finds that the Plaintiff has failed to state a claim for breach of fiduciary duty.

B.   Count V, aiding and abetting fraud

The Plaintiff alleges in Count V that both M&I and Flynn aided and abetted the Petters' fraudulent scheme. In order to state a claim for aiding and abetting fraud, the Plaintiff must allege: "'(1) there existed an underlying fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided substantial assistance to advance the commission of the fraud.'" *Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, *3 (S.D. Fla. Mar. 8, 2012) (quoting *ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Md.*, 917 So.2d 368, 372 (Fla. 5th DCA 2005)). As discussed below, the Plaintiff adequately alleges that M&I had knowledge of the underlying fraud – Petters' Ponzi scheme. However, the Plaintiff fails to allege that Flynn, individually, had knowledge of the underlying Ponzi scheme. Therefore, as to Flynn, Count V fails to state a claim for aiding and abetting fraud.

C.   Counts VI and VII, fraudulent inducement and misrepresentation

Count VI, fraudulent inducement, and Count VII, fraudulent misrepresentation,[15] are each subject to the heightened pleading requirements of

---

[15] The elements of fraudulent inducement and fraudulent misrepresentation are identical. *Gemini Investors III, L.P. v. Nunez*, 78 So.3d 94, 97 (Fla. 3d DCA 2012) (listing elements of fraudulent inducement); *Arnold v. McFall*, 2011 WL 6980847, *7 (S.D. Fla. Dec. 14, 2011) (listing elements of fraudulent misrepresentation). To plead both fraud in the inducement and fraudulent misrepresentation, a plaintiff "must allege that the defendants: (1) made a statement concerning a material fact, (2) knowing that the statement was false, (3) with intent that the plaintiffs act on the false statement; and (4) the plaintiffs were damaged as a result of their reasonable reliance on the false statement." *Gemini Investors*, 78 So.3d at 97. The Court notes that "[g]enerally, the fraudulent statement must concern a past or existing fact," but if the defendant "makes a future promise to perform with no intent of doing so, the requirement of a past or present fact does not apply." *Id.* (internal citations omitted).

Rule 9(b) as applicable to trustees in bankruptcy. With respect to these counts, the Plaintiff has failed to identify with sufficient particularity: (1) the representations made by the Defendants which were false at the time they were made; (2) how the Palm Beach Funds relied upon those misrepresentations; and (3) how the Palm Beach Funds were harmed as a result of their reliance on the misrepresentations. The allegations do not give M&I "a reasonable opportunity to answer the complaint and . . . adequate information to frame a response." *In re Brandon Overseas*, 2010 WL 2812944, at *5. The Court therefore finds that in addition to failing to meet the notice pleading requirements of Rule 8(a), Counts VI and VII fail to meet Rule 9(b)'s particularity requirements.

D.   Count IX, negligent misrepresentation

The Defendants assert that the Plaintiff's negligent misrepresentation claim, Count IX, should be dismissed because the Plaintiff cannot state a claim for negligent misrepresentation when the alleged misrepresentation relates to a future intent to perform. In his Response, the Plaintiff concedes that Count IX is improperly pled and requests that the Court grant the Plaintiff leave to amend. The Court agrees that a negligent misrepresentation claim cannot be based upon a misrepresentation of a future intent to perform. In order to state a claim for negligent misrepresentation, a plaintiff must allege a misrepresentation of a material fact. *Pruco Life Ins. Co. v. Brasner*, 2011 WL 2669651, *7 (S.D. Fla. July 7, 2011) (listing the elements of negligent misrepresentation). Under Florida law, "[n]either an opinion nor a promise of future action supports a claim of . . . negligent

misrepresentation." *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F.Supp.2d 1228, 1236-37 (M.D. Fla. 2011). Here, the Plaintiff alleges that "M&I intended to and would implement the [DAMA] when in fact such representation was false." The alleged misrepresentation is one of future intent. As a result, the Court finds that the Plaintiff has failed to state a claim for negligent misrepresentation.

E.    Count XII, unjust enrichment

In Count XII, the Plaintiff asserts that based upon a theory of unjust enrichment, he is entitled to reimbursement of all profits and fees earned by M&I in connection with the PBFP Holdings Account established at M&I. In order to state a claim for unjust enrichment, a plaintiff must allege that:

> (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred[;] and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

*Magwood v. Tate*, 835 So.2d 1241, 1243 (Fla. 4th DCA 2003) (quoting *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997)).

Here, the Plaintiff fails to allege how M&I has been unjustly enriched and why it would be inequitable for M&I to keep fees received in connection with the PBFP Holdings Account. Furthermore, the Plaintiff does not allege that M&I failed to provide some value or benefit in exchange for the fees M&I received in connection with the PBFP Holdings Account. The Plaintiff merely alleges the following: "M&I earned substantial profits and fees from the [PBFP] Holdings Account"; "M&I understood the substantial profits and fees it would reap from the Palm Beach

Funds via activity that would take place in the [PBFP] Holdings Accounts"; and "[a]s a result of the benefits the Palm Beach Funds conferred upon M&I, M&I has been unjustly enriched and the Palm Beach Funds have been damaged." The Plaintiff does not plead the fourth element of unjust enrichment – "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Thus, the Court finds that the Plaintiff has failed to state a claim for unjust enrichment.

## IV.    Arguments raised by the Defendants which do not warrant dismissal

### A.    <u>Counts I – IV, fraudulent transfer claims</u>

#### i.    *The "mere conduit" rule*

Counts I through IV assert fraudulent transfer claims pursuant to 11 U.S.C. §§ 541, 544, 548, 550, and FLA. STAT. §§ 726.105, 726.106, and 726.108. The Plaintiff alleges that M&I was a transferee of funds which were received on deposit by M&I into the PCI Account. M&I contends that it was not a transferee of these funds, but was instead a "mere conduit." For the reasons discussed below, the Court finds that it cannot determine at the motion to dismiss stage whether M&I is entitled to the protection of the "mere conduit" rule.

The Eleventh Circuit has "carved out an equitable exception" to the literal interpretation of the statutory term "transferee" in the context of fraudulent transfer actions, which is known as the "mere conduit" rule. *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1322 (11th Cir. 2010) (citing *Nordberg v. Sanchez (In re*

*Chase & Sanborn Corp*.), 813 F.2d 1177, 1178-80 (11th Cir. 1987)). The mere conduit rule:

> is an equitable exception to fraudulent transfer liability that requires a defendant to "establish (1) that [it] did not have control over the assets received, i.e., that [it] merely served as a conduit for the assets . . . and (2) that [it] acted in good faith and as an innocent participant in the fraudulent transfer."

*Perlman v. Bank of America, N.A.*, 2012 WL 1886617, *2 (S.D. Fla. May 23, 2012) (citing *In re Harwell*, 628 F.3d at 1323). The mere conduit rule is an affirmative defense. *Id.*; *see also*, *Steinberg v. Barclay's Nominees (Branches) Ltd.*, 2008 WL 4601042, *7 (S.D. Fla. Sept. 30, 2008). "Florida courts have . . . made it abundantly clear that any affirmative defense . . . may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1277 (11th Cir. 2004) (internal citations omitted). Thus, in order for the Court to dismiss the Plaintiff's fraudulent transfer claims based upon the application of the mere conduit rule, the Complaint must affirmatively and clearly show both elements of the mere conduit rule – that M&I did not have control over the funds received and that M&I acted in good faith.[16]

Here, the Plaintiff concedes that M&I lacked dominion and control over the alleged fraudulently transferred funds. However, the Plaintiff disputes that the Complaint "affirmatively and clearly shows" that M&I received any of the funds in

---

[16] The Court notes that it is generally inappropriate to determine whether a party acted in good faith at the motion to dismiss stage. *Kapila v. Integra Bank, N.A. (In re Pearlman)*, 440 B.R. 569, 577 & n.32 (Bankr. M.D. Fla. 2010) (citing *Notinger v. Costa (In re Robotic Vision Sys., Inc.)*, 374 B.R. 36, 59 (Bankr. D. N.H. 2007); *Miller v. McCown De Leeuw & Co., Inc. (In re Brown Schools)*, 368 B.R. 394, 408 (Bankr. D. Del. 2007)).

good faith. The Court agrees. First, because the mere conduit rule is an affirmative defense, M&I bears the burden of pleading and proving the defense. FED. R. CIV. PROC. 8(c). The Plaintiff need not anticipatorily allege facts that negate the applicability of the defense. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Second, the Plaintiff does indeed affirmatively plead facts which negate M&I's good faith. In evaluating the good faith portion of the mere conduit rule,

> [t]he relevant question is whether [the bank] had actual knowledge of the . . . fraudulent purpose [for which the transfers were made] or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the . . . fraudulent purpose.

*Perlman v. Bank of America*, 2012 WL 1886617, at *2 (*Wiand v. Waxenberg*, 611 F.Supp.2d 1299, 1319 (S.D. Fla. 2009)).

In addition to alleging generally that M&I failed to receive the transfers in good faith, the Plaintiff alleges at various points throughout paragraphs 1 through 239 that M&I violated its internal policies and procedures and banking industry standards, and ignored red flags that should have alerted M&I to the fraudulent nature of Petters' scheme. Additionally, the Plaintiff alleges that M&I, through its employees, knew how Petters' purchase financing transactions were supposed to be structured and knew that despite the intended structure, no payments were coming from retailers. The Plaintiff alleges that M&I, through its employees, met with some of Petters' investors who were concerned that retailers' payments were not being properly routed. The Plaintiff also alleges that M&I affirmatively undertook an obligation under the DAMA which it never intended to perform. Finally, the

Plaintiff has instituted claims against M&I for fraud, aiding and abetting fraud, and conspiracy to commit fraud, and has alleged wrongdoing to support these claims. These allegations are sufficient to negate a finding of good faith at the motion to dismiss stage.

M&I asserts that *Perlman v. Bank of America, N.A.*, 2012 WL 1886617 (S.D. Fla. May 23, 2012), and *Groom v. Bank of America,* 2012 WL 50250 (M.D. Fla. Jan. 9, 2012), govern the issue of whether M&I acted in good faith. The Court disagrees because each of these cases is factually distinguishable from the case currently before the Court. In *Perlman*, the Court dismissed a fraudulent transfer claim based upon the mere conduit rule, holding that allegations of atypical transactions were insufficient to adequately allege the bad faith of an ordinary depository bank. *Perlman*, 2012 WL 1886617, at 2 ("[T]he alleged atypical transactions and other red flags do not comprise 'facts or circumstances [that] would have induced an ordinarily prudent [bank] to make inquiry.'" (internal citation omitted)). The *Perlman* court relied explicitly on *Lawrence v. Bank of America, N.A.*, 455 Fed.Appx. 904 (11th Cir. 2012). In *Lawrence*, the plaintiff alleged that a depository bank had knowledge of its customer's fraudulent activity sufficient to implicate aiding and abetting liability because the customer engaged in atypical transactions and told the bank that he was running an investment club, which violated the bank's internal policies. 455 Fed.Appx. at 905-06. On appeal from the district court's order dismissing case without leave to amend, the Eleventh Circuit Court of Appeals affirmed, holding that allegations that a bank should have known of its

customer's fraud because of the customer's atypical transactions were insufficient to trigger aiding and abetting liability. *Id*. at 907. In so holding, the Court noted that a bank "providing only routine banking services" is not required to investigate its customer's activities. *Id*. Finally, in *Groom v. Bank of America*, the court held that a depository bank's awareness of its customer's unusually large deposits and other atypical transactions did not "constitute the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action." 2012 WL 50250, at *3 (internal citations omitted). Furthermore, the court held that absent a duty to act, failure "to adhere to the customary and accepted standard of care and [failure] to monitor incoming deposits and wires" did not qualify as "substantial assistance" for purposes of aiding and abetting liability. *Id*. at *4.

These decisions are factually distinguishable from the case now before the Court for several reasons. First, the three cases discussed above involved banks which did nothing but provide ordinary banking services. Here, the Plaintiff alleges that M&I provided more than mere ordinary banking services, particularly because M&I affirmatively agreed to undertake certain duties by entering into the DAMA. The Plaintiff also alleges that M&I provided other extraordinary services, including meeting with Petters' investors. Second, in the above three cases, the banks were only alleged to have had knowledge of the fraudulent conduct because of the customer's atypical transactions and in one case, the customer's violation of bank policies. Here, as discussed above, the Plaintiff does not allege that M&I's lack of good faith and knowledge of Petters' fraud are merely the result of atypical

transactions and customer violations of bank policies. Finally, neither *Groom* nor *Lawrence* addressed fraudulent transfer claims or the applicability of the mere conduit rule. Because of these distinctions, the Court finds that *Groom*, *Lawrence*, and *Perlman* are unpersuasive.

For the reasons just discussed, there is no basis for the Court to determine at this stage that M&I acted in good faith as a matter of law. Therefore, the Court finds that the mere conduit rule is not a basis for dismissing Counts I – IV.

*ii.    The single satisfaction rule*

M&I also asserts that even if M&I is deemed to be a transferee, the "single satisfaction rule" prevents the Plaintiff from recovering any funds which have already been returned to the estate. It is true that the Plaintiff's recovery is limited to a single satisfaction of his fraudulent transfer claims. *Bakst v. Wetzel (In re Kingsley)*, 2007 WL 1491188, *3 (Bankr. S.D. Fla. May 17, 2007) ("[A] trustee's [11 U.S.C. §] 550(a) recovery is limited to a single satisfaction by [§] 550(d)," and § 550(d) applies "to 'prohibit a trustee from recovering under [§] 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code.'" (internal citations omitted)); FLA. STAT. § 726.108(1)(a) (permitting "[a]voidance of the transfer . . . to the extent necessary to satisfy the . . . claim"). However, it would be inappropriate to determine the extent to which the Plaintiff can recover allegedly fraudulent transfers at the motion to dismiss stage.

Whether the Plaintiff has already recovered particular allegedly fraudulent transfers is likely to be a complex fact-based inquiry which would require

development of the factual record beyond the Complaint and the exhibits attached thereto. In considering a motion to dismiss, the Court must not look beyond the Plaintiff's allegations and any exhibits attached to the Complaint. Additionally, the Court must determine whether the alleged transfers are in fact fraudulent, and therefore avoidable, before determining the extent to which the Plaintiff can recover them. "[T]he concepts of 'avoidability' and 'recovery' are distinct concepts completely separate and independent from one another." *Yoppolo v. Liberty Mortg. (In re Morgan)*, 276 B.R. 785, 790 (Bankr. N.D. Ohio 2001). "It follows that [the] Court must first determine whether any of the transfers were fraudulent and, therefore, avoidable . . . before they can be recovered by the Trustee." *Collins v. Cayuga Energy, Inc. (In re South Glens Falls Energy, LLC)*, 2009 WL 2883141, *4 (Bankr. N.D.N.Y. Jan. 30, 2009) (citing *Brown v. Phillips (In re Phillips)*, 379 B.R. 765, 780 (Bankr. N.D. Ill. 2007)). For these reasons, the Court will not determine at this stage the extent to which the Plaintiff can recover the allegedly fraudulent transfers.

*iii.* *In pari delicto*

M&I asserts that the Plaintiff's fraudulent transfer claims must be dismissed because the doctrine or defense of *in pari delicto* bars these claims due to the wrongful conduct of David Harrold ("Harrold") and Bruce Prevost ("Prevost"), the principals of the Palm Beach Funds. The Court disagrees. "The doctrine of *in pari delicto* is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Official*

*Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (quoting Black's Law Dictionary 794 (7th ed. 1999)). The doctrine is "[]a corollary of the unclean hands doctrine[] [and] derives from the Latin *in pari delicto potior est conditio defendentis*: In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." *Campbell v. Moon Palace, Inc*., 2011 WL 3648562, *2 (S.D. Fla. Aug. 19, 2011) (internal quotations omitted) (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985)); *Banco Indus. de Venezuela, C.A. v. Credit Suisse*, 99 F.3d 1045, 1050 (11th Cir. 1996). However, the doctrine of *in pari delicto* is not an automatic bar to recovery in every case in which there is wrongdoing attributable to the plaintiff. "'[U]nless the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater, the *in pari delicto* defense should not be allowed.'" *Banco Indus. de Venezuela, C.A.,* 99 F.3d at 1049 (quoting *Pinter v. Dahl*, 486 U.S. 622, 636, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)). More specifically, the *in pari delicto* defense is applicable "'only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress; and (2) preclusion of suit would not significantly interfere with the effective enforcement of [federal or state law].'" *Moon Palace*, 2011 WL 3648562, at *2 (alteration in original) (quoting *Bateman Eichler*, 472 U.S. at 310-11).

Moreover, the *in pari delicto* defense cannot be raised against fraudulent transfer claims brought by a bankruptcy trustee pursuant to 11 U.S.C. §§ 544 or

548. *Edwards*, 437 F.3d at 1151-52 ("Fraudulent conveyances . . . are an exception to the general rule that the trustee takes the debtor estate as it is at the commencement of the bankruptcy."); *Kapila v. Bennett (In re Pearlman)*, 2012 WL 2072835, *4 (Bankr. M.D. Fla. May 25, 2012) ("[A]voidance actions by a trustee under §§ 544 and 548 are not barred by the *in pari delicto* defense."). Here, Counts II, III, and IV are fraudulent transfer actions brought by a bankruptcy trustee pursuant to §§ 544 and 548 of the Bankruptcy Code. Thus, the Court finds that the doctrine of *in pari delicto* is inapplicable to Counts II, III, and IV of the Plaintiff's Complaint.

On the other hand, the *in pari delicto* defense may be raised as a defense to state law fraudulent transfer claims brought by a bankruptcy trustee pursuant to 11 U.S.C. § 541. This is because under § 541, the "'bankruptcy trustee stands in the shoes of the debtor and [can] bring any suit that the debtor could have instituted' when the debtor filed for bankruptcy." *Edwards*, 437 F.3d at 1150 (quoting *O'Halloran v. First Union Nat'l Bank of Florida*, 350 F.3d 1197, 1202 (11th Cir. 2003)). Because the trustee stands in the shoes of the debtor, any defense can be raised against the debtor's trustee if it could have been raised against the debtor himself. *World Capita Commc'ns, Inc. v. Island Capital Mgmt., LLC (In re Skyway Commc'ns Holding Corp.)*, 389 B.R. 801, 809 (Bankr. M.D. Fla. 2008) (citing *Edwards*, 437 F.3d at 1151-52). "[T]here is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests greater than those of the debtor." *Edwards*, 437 F.3d at 1150.

Count I of the Plaintiff's Complaint is a state law fraudulent transfer claim brought pursuant to § 541. Although the doctrine of *in pari delicto* may apply to Count I under appropriate circumstances, it would be improper for the Court to determine its applicability at the motion to dismiss stage. "*[I]n pari delicto* is an affirmative defense requiring the defendant to prove facts independent of the elements of the plaintiff's cause of action." *Perlman v. Wells Fargo Bank, N.A.*, 830 F.Supp.2d 1308, 1317 (S.D. Fla. 2011) (citing *Pearlman v. Alexis*, 2009 WL 3161830, *2 (S.D. Fla. Sept. 25, 2009)). As an affirmative defense, the doctrine of *in pari delicto* is generally not an appropriate basis for dismissal. *Id.* An affirmative defense may only be a basis for dismissal "when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." *Jackson v. BellSouth Telecomms.*, 372 F.3d at 1277 (internal citations omitted). Thus, in order "to prevail on an *in pari delicto* defense at the pleading stage, the [defendant] must show that the factual basis of the defense is definitively ascertainable from the complaint and other allowable sources." *Perlman v. Wells Fargo Bank,* 830 F.Supp.2d at 1317.

Here, the Court cannot definitively ascertain from the face of the Complaint that the Palm Beach Funds, through Harrold and Prevost, bore at least "substantially equal responsibility" for the harm the Plaintiff now seeks to redress. The Complaint alleges Harrold and Prevost each pled guilty to four counts of securities fraud, admitting to falsely representing to limited partners that retailers made direct payments to the Palm Beach Funds, failing to report to the limited

partners that the promissory notes were near default beginning in 2007, and misrepresenting the financial performance of the Palm Beach Funds. However, the Plaintiff alleges that Harrold and Prevost never admitted to, nor were accused of, knowing about or being complicit in Petters' Ponzi scheme. Furthermore, the Complaint allegations indicate that Harrold and Prevost sought access to PCI's financial information in order to protect the Palm Beach Funds from further financial harm. Although this request was denied, it allegedly resulted in the execution of the DAMA – an agreement which the Plaintiff alleges was meant to protect the Palm Beach Funds and certain other investors. These allegations do not allow the Court to definitively ascertain from the face of the Complaint that Harrold and Prevost share substantially equal responsibility for the losses the Plaintiff now seeks to recover.[17] Thus, the Court finds that the doctrine of *in pari delicto* does not bar the Plaintiff's fraudulent transfer claims at the motion to dismiss stage.

iv.    *The Court will not exercise its equitable powers at this stage*

Finally, M&I contends that even if the Court determines that the mere conduit, single satisfaction, and *in pari delicto* rules do not bar the Plaintiff's fraudulent transfer claims, the Court should exercise its "equitable discretion to protect M&I from a result that would be antithetical to the realities of the modern banking system." Although bankruptcy courts do possess certain "equitable powers"

---

[17] Because the Court finds that it is impossible to definitively ascertain from the Complaint that Harrold and Prevost share substantially equal responsibility for the losses the Plaintiff now seeks to recover, it is unnecessary for the Court to consider at this time whether the wrongdoing of Harrold and Prevost is properly imputed to the Palm Beach Funds or whether the "adverse interest" exception applies.

under 11 U.S.C. § 105(a),[18] the United States Supreme Court has significantly circumscribed these powers.

In *Norwest Bank Worthington v. Ahlers*, the Supreme Court held that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Circuit courts have been "insistent that a bankruptcy court's application of § 105(a) is limited to those situations where it is 'a means to fulfill some specific Code provision.'" *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1124-25 (9th Cir. 2000) (citing *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993)); see also, *IRS v. Kaplan (In re Kaplan)*, 104 F.3d 589, 597-98 (3d Cir. 1997) ("'[T]he fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be.'" (quoting *Matter of Chicago, Milwaukee, St. Paul & Pac. R.R.*, 791 F.2d 524, 528 (7th Cir. 1986)). In fact, the Eleventh Circuit Court of Appeals has specifically held that "[t]he statutory language of the Bankruptcy Code should not be trumped by generalized equitable pronouncements." *Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1318 (11th Cir. 2001); *see also*, *Chemical Bank v. First Trust of New York (In re Southeast Banking Corp.)*, 156 F.3d 1114, 1122 (11th Cir. 1998).

Notwithstanding the fact that the Court found the entire Complaint failed to comply with Rule 8(a)'s notice pleading requirements, the Plaintiff has otherwise

---

[18] Section 105(a) states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

31

properly pled the statutory elements of his fraudulent transfer claims. Were the Court to use its "equitable powers" to dismiss the Plaintiff's fraudulent transfer claims, the decision to do so would not be based on a need "to fulfill some specific code provision" and would "trump" the statutory language of the Code. The Court therefore does not have the equitable power to dismiss the Plaintiff's properly pled fraudulent transfer claims.

B.    Counts V – VIII, tort claims

  i.    *In pari delicto, Counts V - VIII*

The Defendants argue that Plaintiff's tort claims must be dismissed because the doctrine of *in pari delicto* bars these claims as a matter of law because the Palm Beach Funds, by virtue of the wrongdoing of Harrold and Prevost, are responsible for the losses the Plaintiff now seeks to remedy. Just as the doctrine of *in pari delicto* applies to state law fraudulent transfer claims brought by a bankruptcy trustee pursuant to 11 U.S.C. § 541, it also applies to common law tort claims brought by a trustee. *Edwards*, 437 F.3d at 1151. However, for the same reasons as those discussed above in relation to the applicability of the *in pari delicto* defense to the Plaintiff's fraudulent transfer claims, the Court cannot definitively ascertain from the Plaintiff's allegations that Harrold and Prevost, the principals of the Palm Beach Funds, share at least "substantially equal responsibility" for the harm the Plaintiff now seeks to remedy.

In arguing that dismissal is warranted based on the doctrine of *in pari delicto*, the Defendants rely primarily on *Peterson v. McGladrey & Pullen, LLP*

(*McGladrey & Pullen I*), 2010 WL 4435543 (N.D. Ill. Nov. 3, 2010). In *Peterson*, the Plaintiff was the Chapter 7 trustee of several funds which were established by Gregory Bell to invest in Petters' Ponzi scheme. *Id.* at *1. The trustee brought claims against the funds' outside auditors for negligently conducting the funds' audits and failing to discover the Ponzi scheme, which allegedly resulted in more than $1.5 billion in losses to the funds. *Id*. The auditors moved to dismiss the trustee's complaint on the basis that the claims were barred by the doctrine of *in pari delicto* because of Bell's alleged misconduct. *Id*. The court granted the auditors' motion primarily because the trustee alleged in the complaint that "Bell affirmatively joined the Ponzi scheme on or about February 26, 2008." *Id.* at *2. Furthermore, the trustee had instituted an action against Bell to recover "for the wrongdoing that directly caused the losses" the trustee was seeking to recover from the auditors in *McGladrey & Pullen I. Id*. at *3.

Not only does the Court find that *McGladrey & Pullen I* is factually distinguishable from the case now before the Court,[19] but on April 3, 2012, the Seventh Circuit Court of Appeals vacated *McGladrey & Pullen I* and remanded the case back to the District Court. *Peterson v. McGladrey & Pullen, LLP (McGladrey & Pullen II)*, 2012 WL 1088274, *5 (7th Cir. Apr. 3, 2012). In *McGladrey & Pullen II*, the Circuit Court held that the trustee's allegations were sufficient to survive a motion to dismiss based on the doctrine of *in pari delicto* because the trustee alleged

---

[19] The Plaintiff here never alleged that Harrold and Prevost knew of the Petters Ponzi Scheme. Furthermore, the Plaintiff never brought suit against Harrold for his alleged wrongdoing. The Plaintiff did file an adversary proceeding against Prevost, but it was a proceeding to avoid and recover constructively fraudulent transfers. *See* Adv. Proc. No. 11-01824-PGH.

that Bell did not know of the Ponzi scheme at the time of the auditors' alleged wrongdoing. *Id*. at *2 ("The court must accept the complaint's allegations – and the [t]rustee expressly alleges that, until February 2008, Bell did not know that Petters had built a house of cards."). Here, the Plaintiff never alleged that Harrold and Prevost knew of Petters' Ponzi scheme. In fact, the Plaintiff alleges that Harrold and Prevost never admitted to, and have never even been accused of, knowing about Petters' Ponzi scheme. Thus, the Court's finding that the Plaintiff's allegations are sufficient to survive a motion to dismiss based upon the doctrine of *in pari delicto* is consistent with the Seventh Circuit's decision in *McGladrey & Pullen II*. It would be inappropriate for the Court to determine at this stage that the doctrine of *in pari delicto* bars the Plaintiff's tort claims.

ii.   *Counts V and VIII, knowledge*

The Defendants argue that the Complaint must be dismissed because they had no knowledge of Petters' Ponzi scheme, and thus, cannot be held liable for any claim requiring knowledge or knowing participation in Petters' Ponzi scheme. The Court disagrees.

The Plaintiff alleges in Count V that the Defendants aided and abetted Petters' Ponzi scheme. In order to state a claim for aiding and abetting fraud, the Plaintiff must allege: "'(1) there existed an underlying fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided substantial assistance to advance the commission of the fraud.'" *Platinum Estates, Inc.,* 2012 WL 760791, at *3 (quoting *ZP No. 54 Ltd. P'ship,* 917 So.2d at 372). The knowledge component

34

may be pled generally. FED. R. CIV. P. 9(b). Here, the Plaintiff alleges that "M&I knew that PCI was perpetrating a fraud or engaging in other wrongful acts through the M&I Account" on account of "(i) the representations, recitals and responsibilities set forth in the [DAMA;] (ii) M&I's knowledge of the manner in which the purchase financing transactions were conducted; [and] (iii) M&I's implied actual notice that no funds flowed from any retailer customers and that instead the [PCI] Account was funded primarily from phony suppliers and lender sources." The Plaintiff also makes numerous allegations throughout paragraphs 1 through 239 that impute knowledge of the Ponzi scheme to M&I. Based on these allegations, the Court finds that the Plaintiff has sufficiently pled the requisite knowledge of the underlying fraud with regards to M&I.

In Count VIII, the Plaintiff alleges that the Defendants engaged in a conspiracy with Petters and PCI to defraud the Palm Beach Funds. To state a claim for civil conspiracy, the Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, *4 (S.D. Fla. July 31, 2009) (internal citations and quotations omitted). The Plaintiff alleges that the Defendants, Petters, and PCI "had an explicit, or in the alternative, tacit, meeting of the minds that they would represent to the Palm Beach Funds that they would comply with the [DAMA]" when they never had any intention of doing so. The wrong the Plaintiff alleges M&I

35

conspired to commit is fraudulently inducing the Palm Beach Funds to detrimentally rely on the DAMA. Thus, for the Plaintiff to state a claim for civil conspiracy, the Plaintiff need not allege that the Defendants knowingly participated in Petters' Ponzi scheme or even that they knew about Petters' Ponzi scheme. The Plaintiff is only required to plead, and did plead, that the Defendants knowingly conspired with Petters and PCI to fraudulently induce the Palm Beach Funds to detrimentally rely on the DAMA.

For the reasons discussed above, the Court finds that the Defendants' contention that they lacked knowledge of Petters' Ponzi scheme is not a basis for dismissing Counts V and VIII of the Complaint.

## V.   Conclusion

Because the Plaintiff's Complaint falls into the category of a "shotgun pleading" and thus fails to comply with Rule 8(a)'s notice pleading requirements, the Court dismisses the Complaint without prejudice to the Plaintiff filing an amended complaint. The Court also finds that in addition to failing to meet the notice pleading requirements of Rule 8(a), Count V, as to Flynn, Counts VI – VII, and Counts IX – XII fail to state claims upon which relief can be granted. Finally, the Court finds the Defendants' arguments for dismissing Counts I – IV, Count V, as to M&I, and Count VIII are not proper bases for dismissal.

### ORDER

With the Court being fully advised in the premises and for the reasons discussed above, the Court hereby **ORDERS AND ADJUDGES** that:

1. The Defendants' Motion to Dismiss is **GRANTED**.

2. The Complaint is **DISMISSED WITHOUT PREJUDICE** to the Plaintiff filing an amended complaint within twenty (20) days of the entry of this Order.

###

Copies furnished to:

Michael S. Budwick, Esq.

Charles W. Throckmorton, Esq.